**METROPOLITAN FURNITURE CO. v. HARTFORD–CONNECTICUT TRUST CO.**

No. 3599.

District Court, D. Connecticut.
July 26, 1937.

Arthur H. Deibert, of Washington, D. C., and David M. Richman, of New Haven, Conn., for plaintiff.

Robert P. Butler, U. S. Atty., and George H. Cohen, Asst. U. S. Atty., both of Hartford, Conn., and W. B. Waldo, Sp. Asst. to Atty. Gen., for defendant.

THOMAS, District Judge.

This is a tax case in which trial by jury was waived. The facts are stipulated. Briefly stated, they are that the plaintiff is a corporation engaged in the business of selling furniture at retail, primarily on the installment plan. Prior to the year 1923, the plaintiff kept its books and made its income tax returns on the accrual basis of accounting. In October, 1923, it applied to and received permission from the Commissioner of Internal Revenue to change, effective as of January 1, 1923, to the installment method of computing and reporting its taxable income, and used this method for the years 1923, 1924, and 1925. The Commissioner permitted this procedure under his general authority to permit returns according to any method which in his opinion reflected true income. On March 16, 1925, the United States Board of Tax Appeals questioned the validity of regulations permitting taxpayer to make returns on the installment method. Appeal of B. B. Todd, Inc., 1 B.T.A. 762. Thereafter, on February 26, 1926, Congress enacted the Revenue Act of 1926 (44 Stat. 9), which specifically authorized the installment method, retroactively as well as prospectively, by sections 212(d) and 1208 (44 Stat. 23, 130). These provisions read as follows:

"(d) Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the payment is completed, bears to the total contract price. In the case (1) of a casual sale or other casual disposition of personal property for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed one-fourth of the purchase price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this subdivision. As used in this subdivision the term 'initial payments' means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made."

"Installment Sales. Sec. 1208. The provisions of subdivision (d) of section 212 shall be retroactively applied in computing income under the provisions of the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, the Revenue Act of 1921, or the Revenue Act of

1924, or any of such Acts as amended. Any tax that has been paid under such Acts prior to the enactment of this Act, if in excess of the tax imposed by such Acts as retroactively modified by this section, shall, subject to the statutory period of limitations properly applicable thereto, be credited or refunded to the taxpayer as provided in section 284."

The main question presented is whether the taxpayer should be taxed on its net income for each of the years of 1923, 1924, and 1925 on the installment basis under the "single tax" rule, on the installment basis under the "double tax" rule, or on the accrual basis.

The plaintiff, in making its returns for 1923, 1924, and 1925, on the installment basis, did not again report amounts which it had already reported in prior years on the accrual basis. These collections aggregated $191,499.79, and the portion of the sum representing installment profits attributable to such collections was $90,-972.40. At the beginning of 1926, there remained on the books of the plaintiff, as accounts receivable with respect to installment sales made during 1923, 1924, and 1925, the sum of $139,721.15.

On May 7, 1927, the plaintiff filed its income tax return for 1926 and paid a tax of $3,845.75, with interest of $90.72, a total of $3,936.47. For some unexplained reason, this return was made on the accrual basis. The $139,721.15 of accounts receivable was not included in income, but the Commissioner accepted the return with only minor adjustments. If he had insisted on this amount being included, the amount of deficiency would have been $18,592.35, plus interest. The Commissioner apparently made no objection to the voluntary switch back to the accrual basis in the return for 1926.

In July, 1927, an internal revenue agent, acting under the direction of the Commissioner, made a field examination of the plaintiff's returns for 1923, 1924, and 1925. He calculated the tax on the installment basis, insisting, however, that a proportionate part of the collections on prior years representing income be included, even though previously reported on the accrual basis for the years in which the sales were made, and full tax paid. By mistake, however, he included the full amount of such collections, aggregating $191,499.79, instead of the profit, which was $90,972.40. In this way, he calculated a deficiency of some $20,000, instead of about $10,000, which is the most he could have properly claimed under his own theory.

The representatives of the plaintiff took exception to what they considered an excessive deficiency, and, without discovering his mathematical error, asked him to re-compute the tax on the accrual basis. This he did, and arrived at an aggregate deficiency of $16,555.46, which he recommended to the Commissioner. The Commissioner accepted his report, and assessed the $16,555.46, with interest at $2,-345.33, or a total of $18,900.79, which plaintiff paid on October 28, 1927.

In September, 1930, the plaintiff filed a claim for refund of said $18,900.79, and on the same date filed a claim for refund of $3,023.26, of the tax paid for 1926. Both claims were made on the ground that no change from the installment method was authorized. Both claims were rejected July 3, 1931. This action was commenced on or about June 26, 1933.

At trial, the plaintiff moved to dismiss so much of the complaint as relates to the year 1926, and this motion raises the additional question of whether the plaintiff is estopped from changing from the accrual to the installment method of computing its income as of January 1, 1923, and from further changing back to the accrual method as of January 1, 1926.

The defendant opposes the motion, on the ground that this voluntary nonsuit was attempted to avoid defendant's equitable defense of estoppel because plaintiff waited until the period for assessment of the deficiency of $18,592.35 had lapsed before bringing this suit. In my opinion, the motion to dismiss or abandon as to 1926 must be denied.

As to the years 1923, 1924, and 1925, the plaintiff was properly on the installment basis, having obtained the Commissioner's consent. Its decision to change to the accrual basis was due to a mistake and misrepresentation of the revenue agent, and, under the circumstances, can hardly be deemed an election.

The Commissioner claimed the additional tax, and plaintiff's only recourse was to appeal to the Board of Tax Appeals, or to pay and sue to recover. It chose the latter course, and no inference is to be drawn from this fact that it permanently elected the accrual basis. It did not secure the permission of the Commis-

sioner to change, as required, but merely requested the revenue agent to make his calculation in the manner that would require the least outlay, apparently intending from the outset to contest any proposed deficiency. The plaintiff merely requested the revenue agent to make an election as to his recommendation to the Commissioner most favorable to it with respect to immediate amount of tax payment. At least, nothing more than this is shown by the stipulated facts.

▆ The position of the Commissioner is that the regulations required a second payment of income tax on income that had already been fully tax paid, and that therefore the additional tax assessed on the accrual basis is less than it would have been had the tax been properly computed on the installment basis. The statute contains no such provision requiring such second payment, and there is no way of so construing it except by reading into it words which are not there. The proposition shocks the conscience. It is ordinarily referred to as the "double tax method," but these words do not adequately describe it. No double tax is imposed, but, by administrative requirement that seems to me to be wholly unauthorized, double payment of the same tax is demanded. If the Government were to sue for such additional payment, due to shifting income from one year to another, after it had been fully taxed, the simple defense of the taxpayer would be payment and discharge. Even if such a tax charge were specifically imposed by a statutory provision, its validity would be very doubtful, for it could be sustained only upon the entirely unwarranted assumption that the same receipts of a taxpayer can be income to him for two separate years. For tax purpose, income is converted into capital when the tax upon it is paid.

It may be suggested that the taxpayer, by electing to use the installment basis, assumes the burdens incident thereto as well as the benefits. The answer is that the taxpayer cannot be deemed to have assumed burdens imposed by unauthorized administrative decree. It is doubtful whether Congress could impose terms so inconsistent with the relief granted without violating the due process clause of the Fourteenth Amendment to the Constitution. The terms required would prevent many taxpayers from obtaining the benefits intended, depending upon the amount of uncollected accounts on the books at the time the change is desired to be made. Such a provision would discriminate arbitrarily and unreasonably between taxpayers. No such statutory provision, however, is involved in the case at bar.

The taxation of income upon the accrual basis necessarily rests upon the theory that the right to receive a payment is itself a valuable property acquisition, and to the extent that the receivable includes profit, is an item of income. Actual receipt of such a payment merely changes the form of the property, and does not result in a second realization of income. When a change is made from the accrual to the installment method, the pre-existing right to receive payment is disregarded, and the time of actual payment is considered to be the time of acquisition. But the change must apply only to transactions on which the income has not been taxed, for it is elementary that the same item of income cannot be acquired by the same taxpayer twice.

Sections 212(d) and 1208 of the Revenue Act of 1926 are remedial statutes, intended to render legal and proper the practice of reporting income from installment sales as payments are made, and to overcome the effect of doubt cast on regulations permitting the practice, expressed by the Board of Tax Appeals, in the case of Appeal of B. B. Todd, Inc., 1 B.T.A. 762. They are not to be interpreted to produce a harsher result than the evil they were intended to remedy, which would occur if they were construed to require payment again of tax on income which has already been fully taxed. The statutory provisions do not require any such forced construction. As said in Paul and Mertens Law of Federal Income Taxation, vol. 1, p. 632, "The 1926 Act contained no provision dealing with the so-called transition period."

The Revenue Act of 1928 (45 Stat. 791) contained provisions intended to put an end to confusion as to the treatment of the transition period. Congress adopted the rule of double taxation, but only prospectively, in section 44(c), 26 U.S.C.A. § 44(c) and note, which reads: "If a taxpayer entitled to the benefits of subsection (a) elects for any taxable year to report his net income on the installment basis, then in computing his income for the year of change or any subsequent year, amounts actually received during any such year on account of sales or other dispositions of property made in any prior year

shall not be excluded." This provision does not control the case at bar, however, and is irrelevant, for the reason that another provision, section 705 of the same act (45 Stat. 881), which is retroactive, is specifically applicable and states a different rule. The section reads:

"Sec. 705. Installment Sales—Retroactive.

"(a) If any taxpayer by an original return made prior to February 26, 1926, changed the method of reporting his net income for the taxable year 1924 or any prior taxable year to the installment basis, then, if his income for such year is properly to be computed on the installment basis—

"(1) No refund or credit of income, war-profits, or excess-profits taxes for the year in respect of which the change is made or any subsequent year shall be made or allowed, unless the taxpayer has overpaid his taxes for such year, computed by including, in computing income, amounts received during such year on account of sales or other dispositions of property made in any prior year; and

"(2) No deficiency shall be determined or found in respect of any such taxes unless the taxpayer has underpaid his taxes for such year, computed by excluding, in computing income, amounts received during such year on account of sales or other dispositions of property made in any year prior to the year in respect of which the change was made.

"(b) Nothing in this section shall be construed as in any manner modifying section 607, 608, 609, or 610 of this Act, relating to the effect of the running of the statute of limitations."

The provision is explained in Willcuts v. Gradwohl (C.C.A.) 58 F.(2d) 587. Judge Stone speaking for the Circuit Court of Appeals said, at page 591:

"Recognizing the exasperating confusion and uncertainty (revealed in the above outline) which had theretofore and then existed as to the installment situation, the act, in section 705 (45 Stat. 881, U.S. C. title 26, § 2705 [26 U.S.C.A. § 2705]), dealt therewith retroactively. The clearly revealed dominant purpose of the section is to compose and terminate this confusion and uncertainty in so far as it then existed except as to a narrowly defined class. Regarding the act of 1926 as having approved the method of including payments of installments received during the transi-

tion years under contracts prior thereto (70th Cong. 1st Sess. House doc. 139, p. 12), this section is limited to returns filed prior to the effective date (February 26, 1926) of that act. It is dealing with those years when there were Regulations contradictory upon this matter. In so dealing, it has in mind that during some years Regulations permitted exclusion of such installments while during others they required inclusion and that taxpayers made returns in the light of the Regulation in force at the time. Congress intends to protect this class of taxpayers and this alone, therefore, it confines the section to those who have filed 'original' returns. It further limits this class to those who made the change to the installment basis prior to the tax year of 1925. A further limit was provisions (contained in section 607-610, both inclusive [26 U.S.C.A. §§ 2607-2610]) as to limitations within which refunds, credits, and recoveries generally could be had. Another important limit was that no refund or credit could be had unless the taxpayer had 'overpaid his taxes for such year, computed by including, in computing income, amounts received during such year on account of sales or other dispositions of property made in any prior year,' and no deficiency assessment was allowable unless the taxpayer had 'underpaid' through excluding such receipts. Considering these limitations, a concise statement of the class permitted to recover under this section is as follows. The only installment dealer who could have a refund or credit for overpayment was one who had changed from the accrual basis by an original return filed prior to February 26, 1926, for any tax year prior to 1925, and where such overpayment for which recovery was sought resulted from a computation of income including installments received from contracts made in prior years. This clearly meant that no refund or credit was to be allowed arising from inclusion of such installment payment receipts after the change to the installment basis. On the other hand, the government was denied the right to assess additional taxes for exclusion of such receipts. In short, the purpose was to leave the taxpayer and the government bound by the basis actually used and upon which payments had been actually made."

As thus construed and explained, the Commissioner's agents misrepresented the tax liability on the installment plan

to the plaintiff, and its request to have the tax computed on the accrual basis under the circumstances cannot be considered a voluntary or binding election. The plaintiff was not liable for any deficiency whatever. Under section 705 of the Revenue Act of 1928, the Commissioner was prohibited from assessing any deficiency on the ground that the taxpayer excluded, in computing taxable income, amounts received from installment sales made during the year of change or any prior year. The plaintiff's original returns therefore reflected its correct income and taxes. The fact that the deficiency was assessed on the accrual basis does not take the case out of the prohibition of section 705, since the only excuse advanced at any time for such assessment was that plaintiff had understated its income on the installment basis, and this was not true under the provisions of section 705.

The assessment and payment were, of course, made before the enactment of section 705. The section, however, was retroactive, and this places the Commissioner in the wrong, but, in any event, there was no justification for the double tax computation, or the substitution of the accrual basis, at the time. The plaintiff, therefore, must prevail as to the years 1923, 1924, and 1925.

This brings us to a consideration of the issues as to 1926. The return for this year was voluntarily made on the accrual basis, and was apparently accepted by the Commissioner, but must nevertheless be disregarded. The taxpayer did not obtain the consent of the Commissioner to change back to the accrual basis for 1926. The Commissioner's acquiescence in the return without raising the double tax point, or making adjustments for the change, was apparently due to inadvertence, and cannot be considered as equivalent to express consent to the change. The taxpayer may not change its basis at its whim, but must pursue a consistent course from year to year.

The plaintiff cannot be heard to urge its own failure to obtain the Commissioner's consent as a reason for remaining on the installment basis for 1926, but here there are impelling reasons why the change cannot be allowed. Government counsel oppose plaintiff's motion to dismiss as to 1926. The plaintiff, by its complaint, demands restoration to the installment basis for 1926. Important interests of the Government as to subsequent years, to which a dismissal would be prejudicial, are involved. The plaintiff having brought the 1926 issue into this court must be content to have the correct tax liability for this year determined on the merits, even though, for tactical reasons, it deemed it wise to abandon its cause of action.

■ It appears that at the close of business on December 31, 1925, the following accounts receivable remained on the books with respect to installment sales made during the years 1923, 1924, and 1925:

On 1923 contracts............ $ 19,389.49
On 1924 contracts............ 27,579.61
On 1925 contracts............ 92,752.05

Total ............... $139,721.15

No adjustment was made, in the 1926 return on the accrual basis, for taxes on this amount of income. If the return is allowed to stand, this income will go untaxed. Since the change back to the accrual basis was unauthorized and would have this result, it cannot be permitted to stand. The plaintiff must be held to the consistent course, in order that this income may ultimately be reported and taxes paid on it.

■ The plaintiff maintains that it has the right to abandon its suit as to 1926, since no counterclaim was filed. The defendant, however, had pleaded equitable defenses, and under section 274b of the Judicial Code, U.S.C.A. title 28, § 398, this gives the court jurisdiction to decide all the equities in the same manner as if the defendant had filed a bill in equity. This jurisdiction cannot be thwarted by a voluntary abandonment or dismissal of part of the complaint, over the objection of the defendant that such abandonment or dismissal would prejudice rights of the defendant. The power of the court to do justice cannot be frustrated by any such device. Even though, as said by the plaintiff in reply, defendant had been inequitable towards the plaintiff, this fact does not affect the power of the court to decide the equities, where the defendant, as here, has pleaded equitable defenses.

No sound reason has been shown for a change from the installment method to the accrual method for 1926. Its only effect would be to relieve the plaintiff from taxes on an aggregate of $139,721.15, which ought to be paid for 1926 or subsequent years.

98

The plaintiff has included 1926 taxes in this suit, and asks that the return for 1926 be disregarded because made without permission on the accrual basis. Its motion to withdraw its claim in this respect is resisted by the defendant, and must be denied.

The fact is not overlooked that the defendant now takes the view that the accrual basis for 1926 is proper, but I think that this view is erroneous, and not to the best interest of the Goverment, in that, if that course were adopted, it would foreclose any possibility of collecting tax on $139,721.15. Equity and justice require that the computation for 1926 be on the same basis as for 1923, 1924, and 1925.

By stipulation, if the returns for all four years are to be made on the installment basis, according to the "single tax" rule, the total overpayment, for which the plaintiff is entitled to judgment, is $20,-931.71.

The defendant's request for special findings of fact, as on file will more fully appear, is granted. The request for conclusions of law and judgment are denied.

My conclusion, therefore, is that the plaintiff is entitled to judgment for overpayments of income taxes for the years 1923, 1924, 1925, and 1926, in the aggregate sum of $20,931.71, calculated as in subparagraph (c) of paragraph XXII of the Government's request for special findings of fact, together with interest. Submit order accordingly properly consented to as to form.